## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PHILLIP BROWN,

      Plaintiff,                  Case No. 09-11449

v.                                 Hon. Gerald E. Rosen

VSI METER SERVICES, INC. and
BRUCE TOMBO,

      Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____September 8, 2010_____

PRESENT:  Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Phillip Brown commenced this case in Wayne County Circuit Court on March 2, 2009, alleging that his former employer, Defendant VSI Meter Services, Inc., and a fellow VSI employee, Defendant Bruce Tombow,[1] retaliated and discriminated against him in violation of three Michigan statutes: (i) the Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq.,* (ii) the Elliott-Larsen Civil Rights Act, Mich.

---

[1]Mr. Tombow is misidentified in Plaintiff's complaint as Bruce Tombo. The Court will use the correct spelling of his name throughout the remainder of this opinion.

Comp. Laws § 37.2101 *et seq.,* and (iii) the Worker's Disability Compensation Act,

Mich. Comp. Laws § 418.101 *et seq.* Defendants removed the case to this Court on April

17, 2009, citing diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1441(a),

1332(a).[2]

By motion filed on January 14, 2010, Defendants now seek summary judgment in

their favor on each of the three state-law claims asserted in Plaintiff's complaint. In

particular, Defendants contend (i) that Plaintiff has failed to produce evidence of

protected activity that could support his claims of retaliation, (ii) that, even if he engaged

in protected activity, the record fails to establish the requisite causal link between such

activity and any adverse employment action, (iii) that Plaintiff has failed to establish a

*prima facie* case of race discrimination or harassment on account of his race, and (iv) that

there is no basis in the record for charging Defendant Tombow with liability under any of

Plaintiff's theories of recovery. In a response filed on April 19, 2010, Plaintiff largely

fails to address these arguments, and instead focuses almost exclusively upon Defendants'

purported failure to produce certain materials sought by Plaintiff during discovery.

Having reviewed the parties' briefs in support of or opposition to Defendants'

motion, as well as their accompanying exhibits and the record as a whole, the Court finds

that the relevant allegations, facts, and legal arguments are adequately presented in these

---

[2]Although Plaintiff alleges in his complaint that both he and Defendant Tombow are
Michigan residents, Defendants state without contradiction in their notice of removal that Mr.
Tombow is a resident of Ohio.

written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that this motion should be granted.

## II. <u>FACTUAL BACKGROUND</u>

For present purposes, the Court need only briefly summarize the pertinent facts of the case, with more detail to follow as necessary to resolve the specific issues raised in Defendants' motion. Defendant VSI Meter Services, Inc. ("VSI") is a meter services firm which, among other things, installs and services electric, gas, and water meters for utilities. Non-party Kirt Pearce is VSI's Midwest operations director, and Defendant Bruce Tombow is employed by VSI as a project lead. During the time period of relevance here, VSI was a subcontractor on the Automated Meter Reading ("AMR") program instituted by the Detroit Water and Sewerage Department ("DWSD"), under which Detroit customers of DWSD were provided with new meter reading technology that would eliminate estimated water bills and instead transmit water usage data from each residence to a central DWSD database.

Plaintiff Phillip Brown was hired by VSI in January of 2008, and was initially assigned the job of water meter installer. Within a month or two, however, Plaintiff's supervisor, Brian Roberts, became dissatisfied with Plaintiff's performance as an installer and transferred him to a canvasser position. As a canvasser, Plaintiff went door-to-door in an effort to schedule appointments to update the water meters of Detroit residents with

AMR technology. If the customer was not at home, Plaintiff was to leave a door tag asking the customer to call and schedule an appointment.

According to Defendants, Plaintiff was given various warnings over the next several months for violations of VSI policy. In particular, Brian Roberts has stated in an affidavit that during the first six months of his employment, Plaintiff was counseled and warned for "being rude to a supervisor, running red lights and stop signs, performing private work on company time and in a company vehicle, and disappearing during the day and being unable to be located on his route." (Defendants' Motion, Ex. C, Roberts Aff. at ¶ 6.) In addition, Plaintiff was issued a "Constructive Counseling Notice" arising from an incident on October 20, 2008, when he entered data into a company-issued handheld device falsely indicating that he was performing his canvassing duties, while in fact he was attending a Detroit City Council meeting. (*See id.* at ¶¶ 8-10; *see also* Defendants' Motion, Ex. J, Constructive Counseling Notice; Defendants' Motion, Ex. D, Plaintiff's Dep. at 39.) As a result of this October 20 violation of VSI policy, Plaintiff was placed on probation for 90 days and warned that further violations would be grounds for termination.

On December 9, 2008, Defendant Tombow observed and reported to VSI project manager Frank Heilig that Plaintiff had violated Michigan traffic law by driving the wrong way on a one-way street. (*See* Defendants' Motion, Ex. B, Tombow Aff. at ¶¶ 6-11.) The next day, December 10, 2008, Plaintiff's supervisor, Brian Roberts, was informed that Plaintiff could not be located on his assigned route, and that no door tags

had been placed along this route. (*See* Roberts Aff. at ¶¶ 17-20.) Based on these continued violations of VSI policy while Plaintiff was on probation, Kirt Pearce and Frank Heilig decided to terminate Plaintiff's employment, and Roberts concurred in this decision. (*See id.* at ¶ 23; *see also* Defendants' Motion, Ex. A, Pearce Aff. at ¶ 32; Defendants' Motion, Ex. K, Heilig Aff. at ¶ 10.) According to Defendants, Mr. Tombow played no role in the decision to terminate Plaintiff's employment.

On December 11, 2008, VSI management summoned Plaintiff with the intention to inform him of his termination. When Plaintiff arrived at the VSI office, however, he bent over and requested medical assistance. EMS arrived at the scene, and reported that Plaintiff appeared to be in "absolutely no distress." (Defendants' Motion, Ex. M, EMS Report.) Nonetheless, Plaintiff was transported to the hospital, and VSI management asked Defendant Tombow to follow Plaintiff to the hospital in the event that any further information was needed from the company. Plaintiff acknowledged at his deposition that he did not file a worker's compensation claim arising from this incident. (*See* Plaintiff's Dep. at 209-10.)

On December 12, 2008, Frank Heilig called Plaintiff and notified him of his termination. This lawsuit followed, with Plaintiff alleging that his discharge and other adverse actions he purportedly suffered while employed by VSI were the product of unlawful retaliation or race discrimination.

## III. ANALYSIS

**A.    The Standards Governing Defendants' Motion**

Through the present motion, Defendants seek summary judgment in their favor on each of Plaintiff's three state-law claims. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must — by affidavits or as otherwise provided in [Rule 56] — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.** **Plaintiff's Discovery-Related Complaints Do Not Warrant the Denial of Defendants' Summary Judgment Motion.**

As noted earlier, Plaintiff's response to Defendants' summary judgment motion largely ignores the substantive issues raised in Defendants' motion, and instead focuses almost entirely upon certain "vitally important" materials that Plaintiff sought from Defendants during discovery but were not forthcoming. (*See* Plaintiff's Response at 7.) Consequently, the threshold question before the Court is whether Plaintiff's discovery-related complaints provide a basis for either denying Defendants' motion or reopening the discovery period. As discussed below, the Court finds that the discovery-related issues raised by Plaintiff have no bearing upon the proper disposition of Defendants' motion.

Under the Court's May 28, 2009 scheduling order, as amended by a subsequent October 8, 2009 stipulated order, the discovery period in this case closed on December 15, 2009. Throughout this entire period, Plaintiff never once sought the Court's intervention in any discovery dispute, whether through a motion to compel or otherwise. Rather, the first indication that Defendants might not have fully complied with Plaintiff's discovery requests came when Plaintiff filed a motion on January 27, 2010 — more than a month after the close of discovery — complaining (i) that Defendants' responses to certain discovery requests were inadequate, and (ii) that Defendant VSI had failed to make certain of its employees (including Defendant Tombow) available for depositions. By order dated February 2, 2010, the Court largely denied Plaintiff's motion as untimely, citing a provision in the May 28, 2009 scheduling order requiring that motions to compel

must be brought within 14 days after a party has notice of a discovery-related dispute.

In its February 2 order, however, the Court found that one of Plaintiff's complaints had been timely raised within the 14-day period for doing so, and this aspect of Plaintiff's motion was referred to the Magistrate Judge for resolution. By order dated April 20, 2010, the Magistrate Judge denied this remaining portion of Plaintiff's motion to compel on a number of procedural grounds, including (i) that Plaintiff failed to state in his motion whether he had sought Defendants' voluntary compliance or concurrence, as required under Fed. R. Civ. P. 37(a)(1) and Local Rule 7.1(a) of this District, (ii) that Plaintiff's counsel failed to conduct a pre-hearing conference with defense counsel or to file a joint statement of unresolved issues, as required in a February 2, 2010 notice of hearing issued by the Magistrate Judge, and (iii) that Plaintiff's counsel failed to appear at the March 2, 2010 hearing on Plaintiff's motion.[3] Plaintiff did not file any objections to this April 20 order. *See* Fed. R. Civ. P. 72(a) (authorizing the filing of objections to a Magistrate Judge's order within 14 days).

Consequently, to the (modest) extent that Plaintiff timely exercised his opportunity to seek the Court's intervention in a discovery dispute, he failed to obtain any relief

---

[3]In Plaintiff's response to Defendants' summary judgment motion, Plaintiff's counsel refers to a medical condition that left him unable to participate in this litigation between mid-February and early April of 2010. While this would explain Plaintiff's counsel's failure to appear at the March 2 hearing before the Magistrate Judge, it does not overcome the other grounds identified by the Magistrate Judge for denying Plaintiff's motion to compel. More importantly, it does not explain or justify counsel's failure to vigorously pursue and secure all necessary discovery before the December 15, 2009 discovery cut-off date, and to timely bring any discovery-related complaints to the attention of the Court within 14 days.

whatsoever.  Surely, then, he can fare no better by reasserting these same discovery-related complaints in his response to Defendants' summary judgment motion.  To the contrary, Plaintiff has long since forfeited any opportunity to challenge any purported shortcomings in Defendants' discovery responses.  Likewise, Plaintiff's April 19, 2010 response to Defendants' summary judgment motion is neither a timely nor an appropriate vehicle for seeking to reopen a discovery period that closed over four months earlier, particularly where Plaintiff and his counsel have utterly failed to suggest why they could not have completed their discovery efforts within the allotted time for doing so.

Moreover, Plaintiff and his counsel have failed to invoke the mechanism expressly provided under the Federal Rules of Civil Procedure for seeking additional discovery that is necessary to properly oppose a summary judgment motion.  Specifically, under Rule 56(f), a party opposing a summary judgment motion may attempt to "show[] by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  Upon such a showing, "the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken."  Fed. R. Civ. P. 56(f)(2).  Yet, in his response to Defendants' summary judgment motion, Plaintiff does not even cite this Rule, much less suggest how he might have made the requisite showing to justify a continuance.

In any event, the Court is confident that no such showing has been made here.  As the Sixth Circuit has explained:

> The importance of complying with Rule 56(f) cannot be

overemphasized.  If the appellant has not filed either a Rule 56(f) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.  Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information.

*Cacevic v. City of Hazel Park,* 226 F.3d 483, 488 (6th Cir. 2000) (internal quotation marks, alteration, and citations omitted).

Plaintiff has satisfied neither the procedural nor the substantive requirements of Rule 56(f).  First, he has not affirmatively moved for relief under this provision, but instead has lodged only a generalized complaint — a complaint which, as noted, was previously addressed and rejected by this Court and the Magistrate Judge on procedural and timeliness grounds — that Defendants failed to produce certain materials during discovery.  Next, while Plaintiff has provided an affidavit as called for under Rule 56(f), this affidavit merely sets forth Plaintiff's belief that Defendant VSI has in its possession the materials sought from it during discovery.  This affidavit does not identify any specific, material facts that Plaintiff hopes to glean from these discovery materials.  Likewise, Plaintiff does not attempt such a showing in his response brief, but merely states in conclusory fashion that the requested documents are "vitally important," (Plaintiff's Response at 7), without any effort to explain why this is so or to identify specific information that might be contained in these documents that would bear upon the issues raised in Defendants' summary judgment motion.  *See Ironside v. Simi Valley*

*Hospital,* 188 F.3d 350, 354 (6th Cir. 1999) (finding no basis for a Rule 56(f) continuance where the "[p]laintiff's affidavit makes only general and conclusory statements regarding the need for more discovery").  Finally, the Court has already noted the absence of any valid excuse for Plaintiff's failure to secure the materials in question before the close of discovery, or to timely move to compel the production of these materials when Defendants failed to provide them within the time limits set forth in the Federal Rules.

Under these circumstances, then, Plaintiff's complaints about purported deficiencies in Defendants' discovery responses do not provide a basis for either denying Defendants' summary judgment motion or ordering a Rule 56(f) continuance.  Moreover, since these discovery-related complaints comprise the bulk of Plaintiff's response to Defendants' motion, there is little standing in the way of an award of summary judgment in Defendants' favor.  Indeed, apart from advancing these discovery-related complaints, Plaintiff's response does little more than repeat the allegations of the complaint, without any effort to point to (or even cite) specific portions of the record that might support these allegations.[4]  "Nothing in either the [Federal] Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record."  *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir. 1992).  To the contrary, it

---

[4]As a particularly egregious example, Plaintiff states at various points in his response to Defendants' motion that he "testified at length" about certain matters at his deposition, (*see, e.g.,* Plaintiff's Response at 3, 4), yet he has utterly failed to direct the Court's attention to any specific portions of his deposition testimony — or, indeed, to provide a transcript of this testimony as an exhibit to his response.  Evidently, then, the Court is simply expected to accept the bare representations of Plaintiff's counsel as to what might be found somewhere in the record compiled during discovery.

would be "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party:  seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino,* 980 F.2d at 406. Nonetheless, despite Plaintiff's failure to properly oppose Defendants' motion, the Court will address the substantive issues raised in this motion, in order to ensure that Defendants have established their entitlement to an award of summary judgment in their favor.

**C.    There Is No Evidence of a Causal Connection Between Plaintiff's Protected Activity and His Discharge, As Necessary to Sustain a Claim Under Michigan's Whistleblowers' Protection Act.**

In Count I of his complaint, Plaintiff asserts a claim under Michigan's Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws § 15.361 *et seq.,* alleging that Defendants retaliated against him for reporting a suspected violation of the law to the Detroit City Council.  In seeking summary judgment in their favor on this claim, Defendants argue that Plaintiff did not engage in protected activity under the WPA, and that, even if he did, he cannot establish the requisite causal connection between any such protected activity and an adverse employment action.  The Court agrees with the second of these contentions, and thus need not determine whether Plaintiff engaged in protected activity.

Under the pertinent provision of the WPA, an employer may not "discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the

12

employee . . . reports or is about to report, verbally or in writing, a violation or a

suspected violation of a law or regulation or rule . . . to a public body." Mich. Comp.

Laws § 15.362. To establish a *prima facie* case under this WPA provision, Plaintiff must

show (1) that he was engaged in protected activity as defined by the WPA, (2) that he was

discharged or discriminated against, and (3) that "a causal connection exists between the

protected activity and the discharge or adverse employment action." *West v. General

Motors Corp.,* 469 Mich. 177, 665 N.W.2d 468, 471-72 (2003).

In this case, the protected activity identified by Plaintiff is his appearance before

the Detroit City Council on October 20, 2008 to complain that union dues were being

improperly withheld from his paycheck and the paychecks of other VSI employees.[5] In

Defendants' view, however, Plaintiff's deposition testimony fails to establish that he

actually reported such a suspected violation during his appearance before the City

Council. And, to be sure, Plaintiff's rambling testimony on this point, with its references

to a "fake union," lack of representation, and "harass[ment] [of] the citizens of Detroit,"

(Plaintiff's Dep. at 45), does not clearly indicate precisely what violation or suspected

violation he might have reported. Nonetheless, viewing this testimony in a light most

favorable to Plaintiff as the non-moving party, the Court accepts, at least for present

purposes, that Plaintiff's appearance before the Detroit City Council qualifies as protected

---

[5]Plaintiff alleges in his complaint that he appeared before the City Council on more than one occasion to raise this complaint, but the record discloses only one such appearance on October 20, 2008.

activity under the WPA.[6]

As the second element of his *prima facie* case, Plaintiff must identify an adverse

employment action he suffered. Plainly, his discharge qualifies as one such adverse

employment action, and Defendants do not contend otherwise. Plaintiff does not fare as

well, however, with his remaining claims of adverse employment actions. First, while he

claims that "his work hours were cut from sixty hours down to twenty-five hours a week,"

(Plaintiff's Response at 3), he has failed to identify any evidentiary support whatsoever

for this contention.[7] Next, Plaintiff cites an incident where a bottle was thrown at him on

his way to work, but he acknowledged at his deposition that he had no proof that VSI

management was involved in this incident, (*see* Plaintiff's Dep. at 54), and there is no

---

[6]It is worth noting that Defendants concede that union dues were mistakenly deducted
from the pay of some VSI employees, including Plaintiff. (*See* Pearce Aff. at ¶¶ 17-22.)
According to Kirt Pearce, this error was promptly corrected as soon as he learned of it, and the
erroneously withheld dues were refunded to the affected employees. (*See id.* at ¶¶ 19, 21-22.)
The Court further notes that Michigan law appears to prohibit such deductions that are not
"required or expressly permitted by law or by a collective bargaining agreement." Mich. Comp.
Laws § 408.477(1). To be sure, Plaintiff has not cited this law in his complaint, his response
brief, or elsewhere in the record, but a recent decision of the Michigan Supreme Court suggests
that such a specific reference to a law, regulation, or rule is not necessary in order to engage in
protected activity under the WPA. *See Debano-Griffin v. Lake County,* 486 Mich. 938, 782
N.W.2d 502 (2010) (reversing a decision, *Debano-Griffin v. Lake County,* No. 282921, 2009 WL
3321510, at *4 (Mich. Ct. App. Oct. 15, 2009), in which the Michigan Court of Appeals found
no protected activity, based in part upon the plaintiff's failure to "identify a single statute, rule,
or regulation that defendants' activities . . . allegedly violated").

[7]Notably, while Plaintiff has attached his purported pay records as an exhibit to his
response, this exhibit discloses only *a single week* between January and September of 2008 in
which he worked 60 or more hours. (*See* Plaintiff's Response, Ex. M.) Moreover, these records
do not assist Plaintiff in establishing a reduction in his work hours after he engaged in protected
activity, as they extend only into September of 2008, and thus do not include any work weeks
*following* Plaintiff's October 20, 2008 appearance before the City Council.

evidence that this isolated incident had any tangible effect upon the terms or conditions of Plaintiff's employment. Finally, Plaintiff asserts that he was monitored more closely after his City Council appearance. Again, however, to qualify as "adverse," an "employment action must be materially adverse to the employee — that is, it must be more than a mere inconvenience or minor alteration of job responsibilities." *Chen v. Wayne State University,* 284 Mich. App. 172, 771 N.W.2d 820, 839 (2009). The Court finds that the additional monitoring alleged by Plaintiff, with no identified, tangible impact upon the terms or conditions of his employment, does not qualify as "adverse" under this standard.[8]

Consequently, Plaintiff's *prima facie* case turns upon the question whether he has produced evidence of a causal connection between his protected activity and the sole adverse employment action that is supported in the record — namely, his discharge. "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation." *West,* 665 N.W.2d at 473. For example, the Michigan courts have found sufficient evidence of the requisite causal connection where there was a "close temporal relationship" between the employee's

_____

[8]The Court notes that in the "Constructive Counseling Notice" issued to Plaintiff when it was learned that he had attended the October 20, 2008 City Council meeting during his normal work hours while falsely claiming to be working, Plaintiff was expressly advised that he was being placed on a 90-day probation period. (*See* Defendants' Motion, Ex. J.) As observed by Plaintiff's supervisor, Brian Roberts, "[w]hen an employee is put on probationary status following a measure of discipline, the employee is closely observed for additional infractions." (Roberts Aff. at ¶ 13.) Thus, even if the additional monitoring alleged by Plaintiff qualified as an adverse employment action, he would face considerable difficulty in establishing that this monitoring was the product of his engagement in protected activity, as opposed to his placement on probation following an acknowledged violation of VSI policy.

protected activity and an adverse employment action and the employee's "superior expressed clear displeasure with the protected activity."  665 N.W.2d at 473.

While Plaintiff makes a similar claim here that VSI management evidenced hostility toward his decision to appear before the Detroit City Council, the record lends no support to this contention.  To the contrary, Plaintiff himself testified at his deposition that his supervisor, Brian Roberts, expressed his anger because Plaintiff was "down at city council and you were suppose[d] to be on your job."  (Plaintiff's Dep. at 54.)  Similarly, Mr. Roberts states in an affidavit that he told Plaintiff he was free to attend City Council meetings and register complaints, but that "he could not do so when he was 'on the clock,' and he could not falsify VSI records."  (Roberts Aff. at ¶ 11.)  Likewise, the individual who decided to terminate Plaintiff's employment, Kirt Pearce, states in his affidavit that he "harbored no animosity against [Plaintiff] for making a complaint to city council," but that he "did, however, take issue with the fact that [Plaintiff] falsified records while he attended the city council meeting."  (Pearce Aff. at ¶¶ 23-24.)  Accordingly, Plaintiff has offered nothing beyond his mere subjective belief that his discharge was causally connected to his report of unlawful pay withholding to the Detroit City Council, and this is not sufficient to establish a *prima facie* case under the WPA.  *See Smith,* 665 N.W.2d at 473-74 (finding that the requisite causal connection was not established where the plaintiff offered "nothing more than pure speculation and conjecture" to link his protected activity and a subsequent adverse employment action).

Even if Plaintiff could establish a *prima facie* case, the burden would then shift to

Defendants to articulate a legitimate, non-retaliatory reason for the decision to discharge Plaintiff. *See Jennings v. County of Washtenaw,* 475 F. Supp.2d 692, 714 (E.D. Mich. 2007); *Hopkins v. City of Midland,* 158 Mich. App. 361, 404 N.W.2d 744, 751 (1987). Defendants have met this burden here, pointing to Plaintiff's continued violations of company policies and procedures after he had been previously warned and placed on probation. Thus, Plaintiff must show that this legitimate explanation for his discharge is a mere pretext for unlawful retaliation. *See Jennings,* 475 F. Supp.2d at 714; *Hopkins,* 404 N.W.2d at 752. He manifestly has failed to do so, where his response to Defendants' motion rests solely upon the allegations of his complaint, and does not point to anything in the record that might tend to discredit Defendants' explanation.

Even if the Court were to shoulder this burden on Plaintiff's behalf, a review of Plaintiff's deposition reveals only his subjective disbelief of Defendants' explanation, without the support of any facts within his personal knowledge. Plaintiff does not endeavor to show, for example, that other employees committed comparable violations of VSI policy yet were not discharged, or that the violations he committed do not warrant discharge under company policy. While he denies that he committed one of these violations, claiming that he did not drive the wrong way down a one-way street, Defendants' purportedly mistaken belief to the contrary is not enough, standing alone, to establish pretext, absent evidence that Defendants did not actually hold this belief. *See Jennings,* 475 F. Supp.2d at 714. In sum, because Plaintiff has failed to make (or even attempt) the requisite showing of pretext, Defendants are entitled to summary judgment in

their favor on Plaintiff's WPA claim.

**D.    Plaintiff Has Failed to Establish a *Prima Facie* Case of Race Discrimination or Harassment Based on His Race.**

In Count II of his complaint, Plaintiff has asserted claims of race discrimination and harassment based on his race under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.*  As with his WPA claim, however, the Court once again concludes that Plaintiff has failed to establish a *prima facie* case of race discrimination or harassment.

To establish a *prima facie* case of race discrimination under the ELCRA, Plaintiff must show "(1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) either (a) that he was replaced by a person outside the protected class or (b) that similarly situated non-protected employees were treated more favorably."  *Minnis v. McDonnell Douglas Technical Services Co.,* 162 F. Supp.2d 718, 733 (E.D. Mich. 2001); *see also Town v. Michigan Bell Telephone Co.,* 455 Mich. 688, 568 N.W.2d 64, 68 (1997).  As an African American, Plaintiff is a member of a protected class.  In addition, his discharge qualifies as an adverse employment action,[9] and Defendants do not dispute, for present purposes, that he was qualified for his position as canvasser.  Thus, only the fourth and final prong of the *prima facie* case need be considered here.

---

[9]While Plaintiff also points to an alleged reduction in his hours as a candidate for an adverse employment action, the Court earlier noted the absence of evidence of such a reduction.

Simply stated, Plaintiff has made no effort to identify evidence in the record that might establish this element of his *prima facie* case. He does not claim that he was replaced by an individual outside his protected class. Neither has he attempted to raise an inference of unlawful discrimination by pointing to similarly situated employees who were treated more favorably. Rather, as Defendants correctly observe, Plaintiff's claim of race discrimination rests solely upon his speculative, subjective beliefs that other individuals at VSI were treating him differently because of his race. Plaintiff testified, for example, that he could tell that one co-worker harbored race-based animus against him "[j]ust [by] the way he looked at you," that he had a "gut feeling" that Frank Heilig was discriminating against him on account of his race, and that he likewise concluded that Defendant Tombow was discriminating against him because of "just a feeling you get" as a "black man . . . when a white man don't like him." (Plaintiff's Dep. at 151-52, 178-79.) As Defendants point out, "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference" of unlawful discrimination. *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir. 1986).

Indeed, in his response to Defendants' motion, Plaintiff refers to his race discrimination claim only in passing, and makes no effort to cite evidence in the record that might support the fourth (or any other) element of a *prima facie* case. Plaintiff states at one point in his response that he "testified at length about [Defendants'] racial actions and direct statements to him during his deposition." (Plaintiff's Response at 4.) Yet, he cites no specific portion of his deposition testimony as support for this proposition, and

the Court declines to undertake this task on Plaintiff's behalf. The only other reference to a claim of race discrimination is found at page one of Plaintiff's two-page (and aptly named) "brief" in opposition to Defendants' motion, where Plaintiff's counsel makes reference (without any citation to the record) to Plaintiff's supervisors "tak[ing] racial steps and actions towards plaintiff and openly chastising him because of his race." (Plaintiff's Response Br. at 1.) Such unsupported statements by counsel cannot give rise to a genuine issue of fact that would preclude an award of summary judgment.[10]

Plaintiff fares no better on his claim of harassment on account of his race — a claim which, notably, does not warrant a separate mention anywhere in Plaintiff's response to Defendants' motion. To establish a *prima facie* case of harassment, Plaintiff must show, among other things, that he was subjected to a hostile work environment, which entails the production of evidence that "one or more supervisors or co-workers create[d] an atmosphere so infused with hostility toward members of one [race] that they alter[ed] the conditions of employment for them." *Radtke v. Everett,* 442 Mich. 368, 501 N.W.2d 155, 163 (1993) (internal quotation marks and citation omitted). A hostile work environment claim generally must rest upon more than isolated offensive comments or a single offensive act. *Radtke,* 501 N.W.2d at 168. Even if the Court were to comb through the entirety of Plaintiff's deposition testimony for evidence of offensive

---

[10]Even if Plaintiff had established a *prima facie* case of race discrimination, the Court already has noted that Defendants have identified a legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's discharge, and Plaintiff has failed to produce evidence that this reason was pretextual.

comments or acts — a burden borne by Plaintiff which he does not even attempt to satisfy — nothing in this record establishes any sort of severe or pervasive race-based utterances or conduct that could be expected to have altered the conditions of Plaintiff's employment. Accordingly, Defendants are entitled to summary judgment in their favor on this claim.

**E.     Plaintiff's Claim Under the Worker's Disability Compensation Act Fails for Lack of Evidence that Plaintiff Made a Claim for Worker's Compensation Benefits.**

Finally, in Count III of the complaint, Plaintiff alleges that Defendants retaliated against him for filing a claim for worker's compensation benefits, in violation of an anti-retaliation provision in Michigan's Worker's Disability Compensation Act ("WDCA"). *See* Mich. Comp. Laws § 418.301(11). Yet, as Defendants point out, there is no evidence in the record that Plaintiff ever filed such a claim for worker's compensation benefits. Moreover, as this Court recently observed, "[a] retaliatory discharge claim under the WDCA . . . cannot be based on the employer's discharge of an employee because of the employer's anticipation that the employee might file a workers' compensation claim." *Pethers v. Metro Lift Propane,* No. 09-10516, 2010 WL 3023887, at *10 (E.D. Mich. July 29, 2010).[11] Accordingly, this claim is subject to dismissal.

## IV.  <u>CONCLUSION</u>

---

[11]Notably, even if such an "anticipation of claim" theory were viable under the WDCA, Plaintiff seemingly could not establish this theory here, where the record discloses that the decision to fire him was made before he suffered from the medical condition that might have given rise to a worker's compensation claim.

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' January 14,

2010 motion for summary judgment (docket #23) is GRANTED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  September 8, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 8, 2010, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager